Baldwin, J.
The Mutual Assurance Society is based upon the reciprocal pledges of associated owners, by which the insured property of each is bound to contribute to the security of all. The right to compensation in the event of loss, and the duty of contributing for losses of others, arise out of the fact of ownership. Without ownership there can be no membership, and membership ceases upon the cessation of ownership. Property, however, once pledged continues to be so until destroyed or lawfully withdrawn ; and gives to its successive owners the rights, powers and duties of membership. There is, it is true, a personal responsibility as well as a pledge; but the personal responsibility is only for contributions which accrue during ownership, and does not extend to those which accrue before or after.
The contributions of the members consist of premiums, quotas, and additional premiums.
*708 The premium was originally designed to raise a fund ...... . , tor making immediate compensation to owners as losses from fire should occur. The original act of assembly, passed in December 1794, establishing the society, eontempla ted that the premium should be paid at the time of insurance ; but yet, in case of default, authorized the recovery thereof with interest, and the sale of the properly therefor. There have been questions as to the liability of a purchaser from a subscriber, and of the property in his hands, for payment of the premium; (Greenhow &c. v. Barton, 1 Munf. 590. Mut. Ass. Soc. v. Stone &c. 3 Leigh 218.): but these need not be further noticed here; there being no claim in the case before us for the original premium, nor any room for such a claim; the regulations of the society, existing at the time of the insurances in question, providing that a declaration for insurance shall not be binding on either party till payment of the premium. Constitution, Rules and Regulations of the Mutual Assurance Society, p. IS. art. 11. § 3.
The quotas were intended to supply any deficiency in the fund raised by the premiums, and were authorized by the same act of 1794, by what is there called a repartition; and also in effect, though not in name, by the acts of February 1809, § 6. 7. and March 1819, § 1. They were substantially additional assessments upon the property insured, and designed to enable the society to keep up a fund the interest of which would be deemed sufficient to pay the annual losses and expenses. A lien for the quotas was given by the original act of 1794, § 6. 8. upon the property insured, and the same was rendered liable to be sold therefor, not only in the hands of the subscriber, his representatives and assigns, but also when sold or mortgaged; and the purchaser or mortgagee was constituted a member in the room of the original owner. The clauses creating this lien, as indeed most of the legislation on the subject of this cor *709 poration, are extremely awkward ; but there can be no doubt of the intent of the legislature to give a valid and effectual lien, not only against the original member, but against all persons deriving any ownership of the property from him. And this lien was held by this court, in the case of Mut. Ass. Soc. v. Stone &c. 3 Leigh 218. to attach to and follow the properly in the hands of a subsequent bona fide purchaser without notice of the lien or of the insurance.
The additional premium is for the increase of value or hazard shewn by a revaluation, whether the periodical revaluation directed by law and the regulations of the society, or made at any other time, at the instance either of the society or of the insured member. The revaluation does not affect, nor is it requisite for, the validity of the original insurance; except so far as it serves to cure defects therein, or to increase or diminish the sum secured. In other respects the original insurance continues in full force, whether a revaluation be made or not. The member may concur in the revaluation, in which case he executes a declaration of revaluation; but it is not necessary that he should concur, nor that he should have any notice thereof. In case of the death, absence or refusal of a member, the special agent proceeds, with the appraisers, in the revaluation ; and if that shews an increase of value, the former value still governs, unless otherwise directed by the owner. Act of Assembly of 1805, § 7. Constitution, Rules and Regulations, p. 19. 20. 21. 22. § 13. p. 22. § 14. The additional premium is a lien upon the property in like manner as the quotas. Mut. Ass. Soc. v. Stone &c. 3 Leigh 218.
In the present case, the property insured consisted of two tenements in the town of Fredericksburg, which were owned by Claiborne Wigglesworth, and at his death descended to his heirs. One of them was declared for insurance by Wigglesworth, and the other by Wright, a *710 former proprietor; and both were several times reva- * lued after Wigglesworth's death. These tenements were assigned to Wigglesworth's widow for her dower in his real estate: she afterwards intermarried with Waugh, an^ they so^ and conveyed her life estate therein to Shirley the appellant. The claim of the Mutual Assurance Society is for quotas which accrued after Wiggles-worth's death, some before the assignment of dower, others afterwards and before Shirley's purchase, and the rest since his purchase; and also for a small additional premium, which has accrued during Shirley's ownership.
It is contended for the appellant that the widow’s right is paramount to the lien of the society; and if this be so, then it follows that the properly cannot be subjected in his hands to the demand of the society; nor can he be made personally responsible, inasmuch as there can be no indebtedness on his part in the character of owner. This defence is founded upon the supposition of the fact that the insurances of the property were effected subsequently to the intermarriage of inr. and mrs. Wigglesworth. The fact is not asserted in Shirley's answer, nor does it appear from any part of the record. I deem it, however, wholly immaterial, as I consider the lien of the society equally valid in either aspect of the case.
It is true that a widow is dowable of all the lands of which her husband was seized at any lime during the coverture, and that his alienations and incumbrances are not good against her, unless she has united therein, and relinquished her right, on privy examination, in the manner prescribed by law. But the lien in question is not derived merely from lhe,contract of the husband. It is established by the authority of the legislature, the competency of which cannot be questioned; and the extent of the lien depends upon the true construction of the statute. It is therefore a matter of *711 iudicial interpretation whether the legislature intended . i,. , • • . . that the hen on the property insured, given in the most comprehensive terms, should be subordinate to the inchoate and contingent dower interest of the wife. To hold the affirmative would be to uproot the whole institution. The effect of the widow’s holding her dower discharged of its liability for contributions must inevitably be to abrogate the insurance. During her life estate, the assessments upon the properly would be utterly nugatory, as they could not be enforced either against the subject or the owner; nor could there be any liability for previous arrears. In this state of things, there could be no responsibility of the society for destruction by fire: and the insurance, thus defeated during the tenancy for life, would be destroj'ed altogether; for the contract'was to insure the whole fee simple, and not merely the remainder or reversion. If such had been the understanding of the law, the institution could never have had existence, or must have perished in its infancy, by reason of the inherent vice in its constitution, for which there is no remedy, inasmuch as the feme covert could not, if she wmuld, relinquish her dower interest. This result would have been inevitable, unless insurances had been confined to spinsters and widows, bachelors and widowers : the insurances of married men would have been practically prohibited.
A construction so unreasonable and mischievous is impossible. Nothing could be more pernicious to the interests of the feme, or more repugnant to the principles of dower rights. The alienation of the husband by conveyance or mortgage is inoperative at his death as regards the wife, because otherwise the property would be converted, and the proceeds might be wasted. But a pledge by insurance is for the benefit of the feme, and tends not to the destruction but to the preservation of her estate; and to authorize it was a wise and benevolent exercise of legislative power.
*712 The widow, therefore, took her dower interest subject to the lien of the society; but she incurred no personal responsibility until the assignment of her dower, whereby she became a member, and then only for the contributions accruing during her ownership. That every owner of a present freehold estate in insured property becomes a member, according to the true spirit of the law, and the scheme of the institution, I cannot doubt, whatever difficulty might be presented by the mere letter of the statute. As to those contributions which accrued during Wigglesworlh1 s life, and for which, if still in arrear, the assets of his estate would be liable since his death, they seem to have been paid, and to form no part of the present demand : for those which accrued afterwards and before the assignment of dower, his heirs are personally responsible; for till then they succeeded to the membership of their ancestor, and it was their duty to assign the widow her dower. The widow and her second husband are personally liable for the contributions which accrued after the assignment of dower and before their sale to the appellant: and for those which have accrued since, the appellant is personally responsible, but for those only. If a regulation of the society (Constitution, Rules and Regulations, p. 16. 17. § 4.) is to be understood as intended to make a purchaser or mortgagee personally liable for arrears prior to bis title, it transcends the powers of the corporation, which has no authority except over its own members; and it is not until they acquire their title that such persons become members, and then only as regards their own rights and responsibilities.
The decree of the circuit court is consequently erroneous in subjecting the appellant personally to the whole arrears of contributions, with the interest and damages thereon. A personal decree against him for so much of the demand as has accrued during his *713 ownership would not have been improper, but would have given only partial relief to the society. The plaintiffs are entitled to a lien upon the property for the whole principal and interest of their claim, but not for the damages. The damages, it is true, are not to be regarded as a penalty, being nothing more than a reasonable. allowance, under the regulations of the society, for the expenses and trouble of collection. It is-therefore quite proper that these liquidated damages should be embraced in a personal judgment or decree. But no lien therefor is given by the statute; and the effect of treating them as an incidental lien would often be to make one person liable for them in consequence not of his own default, but of the default of another.
When we next consider what decree ought to have been rendered, it appears to me that the lien of the society is to be treated as an entire thing; and not, as suggested by the appellant’s counsel, to be broken into parts, and carried out separately against the estate for life and that in reversion. Such a mode of enforcing an incumbrance would, I think, be unprecedented, and inevitably tend to the sacrifice.of the property, and the diminution of the security. There can be no objection, I admit, to ascertaining the several personal responsibilities ; and that ought to be done, at the most convenient stage of the cause, with the View of adjusting the equities amongst the defendants arising out of the proper relief to the plaintiffs, and, it may be, to the more perfect relief of the plaintiffs themselves. But in the adjustment of those equities, the appellant will not be entitled, as his counsel supposes, to an apportionment of the quotas between the estate for life and that in reversion.
No part of the quotas which have accrued since the assignment of dower, is, in my opinion, chargeable upon the reversion in ease of the life estate. The argument for the appellant is, that the quotas are for the *714 insurance of the whole fee simple, and inasmuch as that operates, in the event of loss, to the remuneration of the reversioner as well as of the tenant for life, it is but reasonable that the former should bear a due proPorl'on the burthen enuring to their benefit. There is much plausibility in this reasoning; but it keeps out of view the important consideration that the quotas, though a lien upon the capital, are a charge upon the profits. They detract by their amount from the income of the estate, but do not break in upon the principal; and the tenant for life, while enjoying the profits, ought to keep down such annual or occasional charges; as the reversioners will have to do when, upon the falling in of the life estate, they come to the perception of the profits. The tenant for life is directly responsible to the society for the quotas, and subject to an action at law for the recovery thereof: but it is otherwise as regards the reversioners, who cannot be called upon at all personally during the continuance of the life estate. And what reason can be given for this, other than the fact that the tenant for life is in the perception of the profits, and consequently alone responsible for the charges upon them ? and what better right can there be to call upon the reversioner for contribution in regard to quotas, than in regard to taxes, or a ground rent, or a rent charge ? The tenant for life, moreover, not only enjoys the profits, but also any income accruing from the insurance itself; for the dividend of any surplus interest arising from the capital funds of the society, directed by the act of 1803, § 12. would surely be payable to the tenant for life, and not to the reversioner or remainderman.
We must bear in mind that the assessment of quotas arises out of an insurance effected by the owner of the whole fee, to the enjoyment of whose estate in the properly the tenant for life and the reversioners succeed successively. It is upon these facts alone that the *715 claim to apportionment is founded, under the influence of the maxim of equity that he who shares the benefit must share the burthen. But here the reversioner shares no benefit, so far as the profits are concerned, during the continuance of the life estate, though the property should be destroyed by fire; for in that event the effect of the insurance is to convert the estate from land into money, and to give the interest in lieu of profits to the tenant for life, and the principal, upon the falling in of the life estate, to the reversioner. And if there is a common benefit to the tenant for life, and the reversioner in securing the capital which yields the profits, it ought to be paid for out of those profits progressively, and in the same succession, with the original hazard. Nor is the claim of tenant for life against reversioner, for contribution on account of quotas during the life estate, stronger than would be that of reversioner against the estate of tenant for life, for quotas accruing during the reversion; for the insurance was of the whole estate, and the quotas are the consideration for the entire insurance.
The supposed analogy of fines for the renewal of leases throws no light upon the present question: for the renewal is in the nature of a new purchase, of which the fine is the consideration, and in cases to which the doctrine is applicable the tenants are treated as joint purchasers of successive interests; and that of course calls for an apportionment of the price according to the value of their respective interests, as much so as if the transaction were an original purchase. A joint declaration for insurance made by successive tenants would bear some resemblance to such renewal of leases: but here the insurance is a mere incumbrance, descending with the estate from the owner of the fee by whom it was created. The most obvious and striking analogy is that of a mortgage; and there *716 the tenant for life is obliged to keep down the interest °f the debt, and in case of redemption to contribute beyond the interest for whatever benefit he derives from the liquidation of the debt. 1 Story’s Eq. 465. Of course if the reversioner or remainderman pays the interest to prevent a foreclosure, the tenant for life is bound to refund; and so it would be in regard to payment of insurance quotas made to prevent a sale under the lien. The certain benefit to the reversioner in the case of a mortgage, or his contingent benefit in the case of an insurance, arising from the payment of the interest in the former or of the quotas in the latter, does not relieve in any degree the tenant for life from the duty, imposed by his enjoyment of the profits, of keeping down the annual or occasional charges. And what, at most, is the substantial effect of the insurance, but a reparation of the property, made or paid for, if you please, by the tenant for life ? and who ever heard of the cost of reparations by the tenant for life, whether partial or total, voluntary or compulsory, being thrown in any degree upon the remainderman or reversioner, however beneficial to him ?
A claim like the present on the part of a dowress, or other person acquiring her title, has less colour of reason than that of any other tenant for life; for the assignment to her of one third of the real estate for dower is based upon an estimate of the annual profits, which involves an allowance for charges thereupon; and so another contribution from the heirs on account of those charges would yield her a double compensation.
Upon the whole, my opinion is that the decree of the circuit court ought to be reversed, and the cause remanded for further proceedings, according to the principles above indicated, and such further directions as shall be given by the decree of this court.
*717 Stanard, J.
I have grave doubts on several of the points embraced by the opinion just delivered by my brother Baldwin. But as the residue of my brethren have no hesitation in concurring in that opinion and the proposed decree of the court, so that whatever the result of any farther investigation on my part might be, the result of the decision would remain unaffected, I have not thought it proper to ask that the decision should be delayed for the purpose of enabling me to make up an opinion.
Brooke and Allen, J. concurred in the opinion of Baldwin, J.
The decree of the court of appeals was entered in the following terms:
The court is of opinion that the decree of the circuit court is erroneous in charging the appellant personally with the whole amount of the appellees’ demand ; the appellant being liable personally only for the quotas and additional premium which accrued during his ownership of the property, with the interest and damages thereon : that the heirs of Claiborne Wigglesworth deceased are personally liable for the quotas which accrued after his death and before the assignment of dower to his widow, with the interest and damages thereon : and that the widow and her second husband Waugh are personally liable for the quotas which accrued after the assignment of dower and before their sale to the appellant, with the interest and damages thereon. The court is further of opinion that the appellees have a lien upon the tenements in the proceedings mentioned respectively, for the principal money and interest respectively due for the insurance thereof, but not for the damages; which lien is to be enforced, if necessary, against said tenements respectively, by sales of the whole fee simple title thereof, and of the *718 whole of each tenement, unless from the nature of the property it be practicable and expedient to lay off portions thereof for such sales respectively. The court is further of opinion that such sales, under the circumstances *he case, ought to be upon credit, except for the charges of sale, which ought to be required in cash : that the amount due to the appellees of principal money and interest, at the times of the sales respectively, ought to constitute the first deferred instalment (which ought to bear interest) and the residue of the purchase money the remaining instalments; the credit for the deferred instalments to be liberal, and the purchase money well secured. The court is further of opinion, that before directing such sales, the respective personal liabilities of the defendants for principal money, interest and damages ought to be ascertained ; and that if the appellant, or any other person, should advance the amount chargeable to the heirs of Wigglesworth, and the personal responsibility of the appellant, and the life estate in the property, should be sufficient to insure payment of the residue due the appellees, then there should be no sale of the reversion, but a lien thereon established for reimbursement of the amount so advanced, with interest thereon ; but such lien not to be enforced until the falling in of the life estate. The court is further of opinion, that in the event of such sales, the deferred instalments, except the first, ought to be divided between the appellant and the heirs of Wigglesworth, according to the value of their respective interests in the property; and that the respective shares ought to be subjected to the respective equities of the defendants amongst themselves. And the court is further of opinion, that if such sales should be necessary, and it shall appear that the common interest of the appellant and the heirs of Wigglesworth will be promoted by the sale of only one of said tenements, and the application of the proceeds as aforesaid, in exone *719 ration of the other, that course of proceeding ought to be adopted, if the relief of the appellees will not be impaired, nor the rights of others injuriously affected thereby. It is therefore ordered and decreed that the said decree of the circuit court be reversed with costs, and the cause remanded for further proceedings according to the principles above declared.